Good afternoon everyone and pleased to have everybody here and we'll call the case Silvis v. the Attorney General of the United States. Mr. Munich? Munich, yes. May it please the court, Ryan Munich for petitioner Damian Siblis. I'd like to reserve three minutes for rebuttal, I guess. How many? Three minutes. That request will be granted. Now in this case, the petitioner was convicted of possession of controlled paraphernalia, which is a Virginia statute that appears in the professions and occupations title. The question before this court is whether that Virginia statute relates to federal controlled substances. And to answer this question, the court can look at the analysis laid out in the Barome v. Attorney General decision. Can I ask you why we would look to Barome and not look to Rojas, which seems to have some pretty specific language about not using the categorical approach, but instead using a straightforward relating to analysis? Yes, Judge Gordon. In Rojas, the court breaks down the test into two steps. And under step one, the court says that it specifically affirms the finding in Barome. And while Barome does make reference to a categorical approach, the analysis in Barome still does consider, in fact, the range of behavior targeted by the statute. Right, but I thought we were pretty clear in Rojas in saying that Barome didn't – in Barome, we looked at the categorical approach for one piece, but we looked for the relating to as to the other piece of the test. And that's what we're doing. And in fact, in looking at the step one, which you rightly note was conceded in Rojas and isn't here, our court and bank said we – it's clear that the categorical approach, the modified categorical approach, have no place in this How do you get around that? Well, Your Honor, we can see that the relating to analysis is not the same as the categorical analysis. But in Barome, it did actually look at the relating to analysis in the context of considering the interconnection between the FDCA and controlled substances and did not do an element to element matchup. It did consider – and in Rojas, they quote language from Barome having to do with this range of But to that extent, that's the reliance on Barome that I would point the court to. Okay. Well then, I guess my question more specifically to you is, to the extent you think Barome says we apply a categorical approach, isn't that by the boards after Rojas? Isn't your entire argument that, hey, this is a categorical approach case gone after Rojas says it isn't? Under these cases, under these circumstances, it's step one, not a categorical approach. Yes, that's correct, Judge Rowe. The underlying categorical approach that was initially argued by Petitioner is no longer a valid argument in light of the Rojas decision. However, even under the relating to analysis, the factors that were used by the court in Barome, if you apply those factors to this Virginia statute, possession of controlled paraphernalia, it mirrors very similar the analysis in Barome in that the range of behavior targeted by the Virginia statute was not intended to cover controlled substances. Rather, it addresses controlled drugs. The statute itself uses controlled drug seven times, and the underlying controlled paraphernalia title has several ways to violate that statute that have nothing to do with possession of controlled substances. How would you address this language from Barome? In Barome, we said, quote, paraphernalia statutes relate to controlled substances, even though they prohibit the possession of instruments rather than controlled substances themselves, because the possession of an item intentionally used for manufacturing, using, testing, or enhancing the effect of a controlled substance necessarily pertains to a controlled substance, end quote. Well, Your Honor, the Virginia statute uses the language controlled drug, not controlled substance. So that's what it comes down to? That's the distinction between a controlled substance and a controlled drug. So when we said paraphernalia statutes relate to controlled substances, your argument is, yeah, but the Virginia statute said controlled drugs. Yes, just like the court found in Barome, that in Barome, the petitioner was convicted of distributing drugs without a license. And the court looked at the underlying substances criminalized by a drug and looked at what's called the Orange Book. And so under this Virginia statute, it criminalizes the definition of drug under the Virginia statute, under 54.1-3401, specifically mirrors the underlying FDCA definition of drugs. It's the same definition as the federal, as is in the Virginia statute. Yes, but let me ask this. And it related to analysis, which Rojas requires controls in this case. If the Virginia paraphernalia statute does not relate to controlled substances, what does it relate to? It relates to a controlled drug, Your Honor. Okay. And not controlled substances? That's correct. And the reason for that is because the underlying statute requires that the underlying controlled paraphernalia be used with the indicia that the person will illegally administer a controlled drug or illegally dispense a controlled drug. And again, the reason why I referred to Barome is that Barome specifically addressed this distinction between a drug versus a controlled substance. And so if you take that distinction Has Barome taken us back into a categorical approach with that analysis? Well the Rojas decision referred to Barome in that the underlying substance criminalized was not a controlled substance. And so I don't think that Rojas repudiated Barome. I think that Rojas would say that the FDCA statute also does not relate to controlled substances because it criminalized drugs, not controlled substances. All right. Your case is in a slightly unusual posture as it relates to Mr. Silvas' removability because on one hand, there's the question of whether or not he's removable because he overstayed. Yes, Your Honor. And there's no question. That was conceded, yes. You conceded that. Yes. So he overstayed. So it seems to me at that stage, the government has established removability. Yes, Your Honor. Would you agree with that? I would, Your Honor. Yes. Okay. Now the question, I think the interesting question and the one that we haven't resolved here is who has the burden, who has the burden to demonstrate eligibility for relief where the record is inconclusive as to what the drug was. I mean, I think that's the question that we have to decide. It's my personal, my opinion, not the opinion of the court. If the court finds that the underlying statute of conviction does relate to controlled substances at that point, it does become a question of under Rojas step two, whether the record of conviction identifies a federal controlled substance. Yes. And in your supplemental letter, you just said you don't need to address that. That's correct, Your Honor. Because the petitioner feels that under step one, because the language in Barone referring to drugs, not controlled substances, that this underlying Virginia statute would also not relate to controlled substances. Well, why don't you address that step two argument? I know Judge Schwerk has a question too. Yes, Your Honor. No, no. You're doing fine. So the underlying burden of proof analysis, the government refers specifically to statute 1229 AC4. And if you look at that statute, it also provides for how the alien is to meet a burden of proof. And it refers specifically to testimony, documentation, or other information, or other evidence. And then it says that after that is submitted, the judge weighs that evidence and looks at the factual conclusions and makes a determination. In Rojas, the court pointed out that when the underlying record of conviction is being analyzed, you are not considering the underlying behavior of the alien. Rather, you are looking at what the alien was convicted of. And so in that circumstance, it doesn't make sense to say that the alien has the burden to demonstrate a legal question. I mean, the legal analysis would control here. And either the record of conviction identifies a controlled substance as defined by the federal schedules, or it doesn't. So is the Ninth Circuit in Bank and Younger's Holder just completely confused? Your Honor, the Ninth Circuit decision, only two of the 11 judges actually agreed with the end result. Five of the judges found that there was the categorical approach applied. And that analysis applied because it was an aggravated felony was the underlying basis. And then four of the judges found that the alien should be able to submit evidence outside the record of conviction in order to meet their burden. But a majority of them decided that the burden was on the petitioner in that case, right? Yes, a majority decided that it was a burden, and a separate majority found that the categorical approach applied. Even if there's a dispute as to what should be proven, doesn't the petitioner always have the burden in every one of these cases to establish entitlement to relief? Well, again, I think if you look at the burden of proof statute that switches this burden for relief applications to the alien, it's talking about factual questions. So if the alien has to demonstrate extreme hardship or a specific amount of time residing in the United States, those are all factual questions that the alien can submit evidence, testimony that just weighs that and makes a factual determination. When the underlying question is whether the record of conviction identifies, the only thing that the alien can possibly do is produce the record of conviction, and either the record of conviction identifies the control substance or it doesn't. Now, how do you deal with what would seem an asymmetric fallout for the government here? Yes, Your Honor. If in Rojas we say to them, hey, inconclusive record, you lose when you've got the burden of proof, and then we were to say, inconclusive record, you still lose when the petitioner has the burden of proof, doesn't that strike you as odd? Well, I guess I would respond two ways, Judge. The first, the burden of proof for the government to establish removability, that's not the I mean, that question is addressing factual issues. Isn't it precisely the same? There's a two-step process. It's set forth in 1227 when removability is the issue, the government bears the burden, and an inconclusive record means they lose. That's Rojas. Right. Here, it's the exact same statutory issue, 1227, but the Real ID Act puts the burden on your client. There's an inconclusive record. Why doesn't that mean the petitioner loses, just like it means the government loses when the burden's on them to demonstrate removability? Well, again, the underlying statute, when it talks about how the petitioner satisfies their burden of proof, that does not apply to the government. So in other words, the government cannot produce testimony to establish removability. The government cannot provide documentation or other information to establish removability. The government can only provide the record of conviction to establish removability or not, and the underlying analysis is that the evidence must indicate clear and convincing that the alien is removable. When an alien demonstrates that the record of conviction is inconclusive, that does not mean they win their case, because as the government acknowledges, the underlying burden shifting applies only in cases where the alien is applying for relief from removal. Relief from removal, almost exclusively, is a discretionary form of relief, as the Court recognized in Moncrief. And so if, in fact, the record of conviction is inconclusive, but the underlying factual basis for the plea can be discerned based on testimony, police reports, the judge would not be constrained from considering that in the exercise of discretion. If we agree with you, what do you want us to do in this case? I want this case remanded to the BIA. And what would the BIA – what position would this case then be in front of the BIA if we remanded it? Well, if the Court orders that either the criminal statute does not relate to controlled substances, it would be one option, and then that leaves Petitioner with only a single offense, and he would be able to show, attempt to show, that the other conviction was involving 30 grams or less and would qualify for the waiver under 1182H. If the Court sends it back addressing the second question, and says that the underlying record of conviction is silent, it would result in a similar disposition, where they would say the record is silent, it must go back to the immigration judge to give the judge a chance to review whether he meets the exception under 1182H. And what would the judge review in that circumstance? Well, the 1182H allows for a circumstance-specific inquiry where the Court can look at whether the underlying conviction involved 30 grams or less of marijuana. So if the underlying conviction – the alien would be able to present testimony to try to meet their burden in that circumstance. But on the paraphernalia issue? Well, in this case, the paraphernalia – the substance is not identified, the paraphernalia is not identified, and so it would be legally – that it does not implicate the inadmissibility ground for that paraphernalia conviction. It would only be the second marijuana possession that would be implicated. Okay. Thank you. We'll have you back on rebuttal. Mr. Nicastro? Good afternoon, Your Honors. May it please the Court, I'm Anthony Nicastro. I represent the Attorney General in this case. Judge Fischer, you're exactly right. The issue that is right before this Court in this particular case is whether or not the alien has met his burden of proof to show eligibility for relief under the statute and under the regulation by showing an inconclusive record of conviction. There are certain things that are not in contention. I think the Court's already pointed that out. One, it's clear that the petition is removable from the United States. He overstayed his visa and there's no contention. Two, the petitioner has the burden to establish his eligibility for relief. The petitioner concedes that in his brief on page 14 through 16. He acknowledges that burden is on him. So the only thing that this Court needs to decide within the context that Rojas framed is whether or not this alien has the burden to show what the substance was that the controlled paraphernalia conviction relates to. But don't we have to get through Rojas' step one? Well, I think we have to do the related to analysis. Yes, Your Honor. And I think Judge Jordan is right. The related to analysis is there. In some ways, Barome almost assists in the related to because it's clear that it talks about paraphernalia statutes are related to controlled substances. Let me answer your opposing counsel's argument that, sure, Barome says paraphernalia is related to controlled substances, but the Virginia statute specifically speaks of controlled drugs and the definition mirrors the FDCA, which Barome says you can't reach out to under a categorical approach. It doesn't work. It won't match up. Right. I think in answer to that question, there's a couple of things. I think that Rojas is straight, has now spoken on the first prong and says this is a related to. And Barome says, looked at paraphernalia statutes. Paraphernalia statutes is the word that Barome used. It says it relates to a controlled substance. And I think the language is any law related to a controlled substance reaches those laws that do not require the actual involvement of a controlled substance. Sure. And I'm trying to get you to speak directly to your learned friend's specific argument that Barome isn't on point because we're talking about a controlled drug, quote, unquote, defined in the Virginia statute, and that's different, really different than controlled substance. That's the argument that's being made to us, so that's the argument I'd like you to meet. Yes. Your Honor, I'll answer it in two parts. First, in Barome, what was critical in that analysis, and he mentioned it twice in Barome, is that the words controlled substance were never in the federal statute that was under issue here. Here, there is a term dangerous, I mean, controlled dangerous substances within the Virginia statute. That's the first point. The second point is Barome also recognizes that there's an overlap between controlled substances and controlled drugs. Barome recognizes that. And what Barome did, and you must remember that Barome was a removability case, they said that that nexus is too tenuous for deportability purposes. Didn't talk about removal purposes. Talked about removability purposes and that connection, that nexus, which they recognize that there is overlap. And I think the term... You're making a distinction between deportability and removability. No, I'm sorry, deportability and removability are one and the same. Right. The distinction I'm making is between removability and deportability in the same... and relief. All right. Gotcha. And Barome said that tenuous connection, yes, they recognize there is overlap. And I think the example they use is OxyContin in Barome. There is overlap. But that is too tenuous for removability. They use the word deportability, but it's the same thing. Right. Here, we're in the relief stage. I think, as Judge Fischer pointed out, that is critical. And that's what Rojas addresses, the inconclusive record. And that burden is squarely placed on the alien. Like the Ninth Circuit, Embank and Young placed it there. The Tenth Circuit and Garcia placed it there. And the Fourth Circuit and Salem placed it there. But the Second Circuit didn't. The Second Circuit has not. And what's interesting about the Second Circuit is that initially Young, when this case was originally briefed, Sandoval-Luau followed Martinez in the Second Circuit. However, on relook, Embank, they decided that that analysis by the Second Circuit was flawed. So they looked at their own case law that relied on Martinez and said, we're going to find that the inconclusive record does not satisfy the alien's burden under the statutory or regulatory burden he bears. Does Moncrief have anything meaningful to say about what's going on in this case? The government would say no, Your Honor, because Moncrief, again, was a removability case. So they never analyzed the relief statute and they never analyzed the regulatory provision on burden of proof. It was not a relief case. So they didn't do the analysis that the Ninth, the Fourth, and the Tenth did on this particular statute. And the uniqueness in removal proceedings on the shifting burden that the Fourth Circuit explained nicely in their decision. Okay, and if you would, you want to take on, again, I know you hit it in your answering brief, but in the reply brief, the petitioner again goes to Thomas, our decision in the United States versus Thomas, and says that we held that because the record was inconclusive, that Thomas had met his burden of proof and was eligible for cancellation of removal. Is that what Thomas held? What's wrong with the line of argument that they made there? I think there's two things about the Thomas decision. First, and that has such limited applicability here. First of all, the Thomas Court did not analyze the statute nor the regulatory burden in depth. They do mention it. They said the burden is in, but that's it. But they must have arrived at that conclusion. There's no other way they could have. Well, I mean, obviously they did arrive at that conclusion, but whether the analysis is proper now under the Rojas decision leaves open the question of whether that is applicable in the pure context of relief from removal in this particular case and the particular statute that is involved, which is a controlled paraphernalia statute. And I think that analysis is controlled, the first part, related to under Rojas. So it simply has to identify the substance. And as Judge Jordan pointed out, it seems to me that if Rojas places the burden on the government in removability proceedings, in other words, we cannot show with a conclusive record of conviction what the substance was, then that alien is not removable. We lose. The inverse should be true for relief. I may have cut off your answer to Judge Jordan's question. So you're distinguishing, Thomas, by saying that they didn't engage in an analysis, they just made a conclusory statement, and that Rojas, in effect, overrules it? I think in part. Certainly the first part is true, that the mention of the statute, and I'm not sure they even mentioned the regulation in Thomas, was a cursory analysis. And they went right to the categorical approach in Thomas, which the Board used in finding that that particular offense in Thomas, I believe it was distribution of marijuana, was not categorically a crime. And I think Rojas has changed the landscape on that, especially as it relates to a paraphernalia statute and the related to analysis, which is different than what Thomas looked at. I want to read you something from Thomas and have you respond to it. This is the court on page 146. We cannot definitively establish that Thomas actually admitted during the guilty plea proceedings that he sold or exchanged marijuana, et cetera, et cetera. And then we go on and say it's equally plausible his admission of guilt was conduct which would not constitute a hypothetical federal felony. I mean, it certainly looks here as if we're trying to figure out something about an inconclusive record. And in the end, we say we'll grant Thomas's petition for review. So why is this case not Thomas, even though Rojas has said some things about how we're going to, you know, approach something analytically related to versus categorical approach, rejecting that piece of Thomas, how the burden falls seems to be us saying the burden falls on the government. Why are we not bound by that even after Rojas? Okay. Your Honor, I guess the best way I can explain that is that in Thomas, the court was looking at a very specific finding that the board made. And they looked at it and said, no, board, you're wrong, so categorically. So now we can't tell it conclusively. And they didn't really address the burden in Thomas. They didn't look at how that shifts within the paradigm of the immigration proceedings. I guess what I'm trying to get, and I think this is, I don't want to put words in Judge Strickland's mouth, but what he was asking, what I'm trying to draw you out on is, how are you distinguishing Thomas on this crucial point? Implicitly, if not explicitly, we put the burden on the government in Thomas. Wouldn't you agree? I think it could be read that way, but I think it could be read that way. How could you read it another way? Because we are saying it's inconclusive and then saying, government, you lose. Petitioner's petition is granted. How do you read it other than that? I would say that within Thomas, that the analysis on the shifting burdens was not fully developed. And I think Rojas has now called into question on the very similar statute, a paraphernalia statute. It's certainly, Rojas certainly cashiers the categorical, modified categorical approach that was employed in Thomas. But how does it speak to the burden of proof? It does, Thomas or Rojas? Rojas. Rojas really doesn't speak to the burden of proof, except from the government standpoint. And just arguing adversely, now that the burden is on the alien, Rojas, the burden is on the government. Here, the burden is on the alien. It's a paraphernalia statute. You have an inconclusive record. You cannot identify the substance. You cannot identify it in Rojas. You cannot identify it here. And I think that changes the paradigm on how Thomas is viewed in the relief standard now that Rojas has come out on bar. So if I'm hearing you right, you're saying, if Thomas put the burden implicitly on the government, Rojas implicitly puts the burden back on the petitioner? Yes. Well, I think Thomas recognizes the burden is on the alien, but says it's inconclusive because it's as much he could be and as much he couldn't, so therefore you satisfy your burden alien. So I think that while they say the burden is on the alien, I think they keep it there, but they don't really look. There is some shifting there on it. And I think Rojas has called into question implicitly probably the best term to use on whether or not that's still accurate.  Thank you, Your Honors. All right. Thank you, Mr. Nicastro. Mr. Munitz. Yes, if I could. In terms of the young beholder decision, the Ninth Circuit panel currently addressing the Almanza case has asked for supplemental briefing as to whether or not Moncrief has overruled the decision, the ombud decision in young beholder. How could it have done that? If, as the government says, it's a removability case, doesn't have anything to do with relief, that wasn't even an issue, wasn't even brought up by the Supreme Court. I wouldn't agree with that characterization. In Moncrief, the person was also looking at an aggravated felony for purposes of relief of cancellation. So I wouldn't characterize it that way. And what the Supreme Court said critically in Moncrief is that this analysis is a legal question. And they also do not address the burden of proof, just like the court in Thomas did. And I think the reason why there's this confusion is that both the Thomas panel and the Moncrief court recognize that it doesn't make sense to speak of what the record of conviction shows. An alien by the statute is not allowed to submit evidence outside the record and only can submit the record of conviction. So if there's any burden that applies, we would only be a burden to produce the record of conviction. And the underlying decision, well, and then Thomas as well is important to recognize, again, that that was also a relief case. It was not, I mean, yes, it was removability as an aggravated felony, but as Fishner pointed out in the reply brief, it doesn't really help the government very much.  And here's what I understand Mr. McCaster to be saying. I understand him to be saying to us, look, Rojas cleared up any confusion there was about what the consequence is of failing to clear up a murky record. When the burden of proof is on the government and you don't clean up a murky record, you lose on your removability case. When the burden is on the petitioner and you don't clean up a murky record, then you lose because the burden falls there. And Rojas makes that at least implicitly clear, and that addresses Thomas. If I understood his argument right. What's wrong with that assertion? In Moncrief, the Supreme Court overturned the BIA decision in Rodriguez that specifically said an alien has the burden to show that the no remuneration and a de minimis amount of marijuana exceptions apply in their case, and the Supreme Court rejected that. Even though those weren't elements of the offense, they were sentencing factors. So you're focusing exclusively on Rojas' prong one, right? If I understand you right, that's got to be your argument because you keep distancing yourself from the government's assertion that there's a murky record here by saying, I guess, it's a legal question, we're never going to get to the murky record. You just want us looking at related to, and you just want us making a legal judgment about whether related to covers the Virginia statute. If I understood you correctly. My name is Spoken, Your Honor. Maybe I misunderstood you. The court can certainly get to the second question. If it finds that the statute relates to controlled substances, it should proceed to step two in Rojas and determine whether the record of conviction identifies. And if we get to that, do you concede that if the record's murky and the burden's on your client, that your client loses? If the court interprets the burden in the way that the government is suggesting, then yes. But that's not the way the burden of proof should be interpreted here. And, again, the reason for that is the same reasons why the categorical approach was developed in the first place. In this case, there is no record of conviction because the state of Virginia does not come off of Virginia, does not create a record of conviction. Well, how does the burden of proof ever lie on the defendant, on the, excuse me, the petitioner? I'm having a hard time understanding how you ever bear the consequences of a failure of burden of proof under the analysis you're proposing to us. Because the government always loses unless I'm misunderstanding it. Any time there's a factual question, if the alien doesn't meet their burden, they would lose. And isn't that exactly the issue that we would be confronted with here if we were decided, if we were to decide at prong one, that this relates to a controlled substance and, therefore, satisfies step one? And now we're asking the question at step two, what's the nature of what actually happened here? I wouldn't characterize step two that way, Your Honor. I mean, the court in Rojas says we're not concerned with underlying acts of the convicted person. We are solely concerned with what they were convicted of. And the reason for that limitation. I apologize. You're correct. What was he convicted of? He's convicted of a drug paraphernalia offense. And you, it feels like you want it both ways. And if my colleagues will just indulge me for a second, because I'm just having a hard time understanding how your conception of the burden of proof works. You seem, on the one hand, to be saying it's just, when you get to that step, it's all categorical and we win. But you, if that's the truth, it seems to me to drain all meaning from the idea that there's a burden of proof at step two as well. And if that's the case, what is, what are we talking about burden of proof at all? What does the statute mean? Well, I guess two parts. One, I don't think that Haley necessarily wins if the record of conviction is unclear. As I mentioned before. Don't run off to its discretionary. That seems to me to be a complete sidelight. Stick with me on what I'm trying to ask. If you understand, if you don't, and my colleagues don't deck me for asking it again, answer the question I'm attempting to push. Sure. Again, I would look at section 1229A C4B, which talks about how the alien meets the burden of proof. And that shows what type of questions the Congress was intending an alien to have the burden of proof on. And it doesn't occur to you that those sorts of questions are things like, what were you convicted of? That's correct, Your Honor. Okay. Convicted, I believe, limits the inquiry to the record of conviction. And the alien is not allowed to present testimonial evidence as to that conviction. They can only look at the record of conviction. Doesn't your approach by necessity get us to the point that under the Virginia paraphernalia statute, there can never be a finding of related to? Well, in this case, the controlled paraphernalia statute is separate from Virginia's drug paraphernalia statute.  Virginia also has a drug paraphernalia statute. The controlled paraphernalia statute, I understand. But doesn't it get us to that result, that under that controlled paraphernalia statute, you can never have a related to case? Well, if it. Because you take, you work the burden through the categorical approach. And whether you use the categorical, the formal categorical approach and the modified categorical approach, we're going to get to the point where you can say some are covered and some aren't. And therefore Virginia conviction can never for controlled paraphernalia conviction can never be a related to conviction. Unless the record of conviction identifies the substance. So in effect, the conviction would be in a way legally infirm. Yes, Your Honor. And so the burden of proof doesn't matter. Exactly. And that's the thing about speaking of the record as being inconclusive. I think that's really the wrong word to use. I think the correct word to use is that the record is indeterminate. When you say inconclusive, it seems like there is a possibility of determining if, but for additional evidence. But in fact, under this legal analysis, if the record of conviction doesn't identify there as a legal matter, the alien hasn't been convicted of that offense. I mean, it's it's it's cabin in that way, but that's the benefit or that's the requirement of the categorical approach, which again, doesn't apply here in terms of comparing it to a generic offense, but does apply in the sense that you were only looking at the record of conviction because the statute uses the phrase. But it means we go through some steps that aren't in the statute. And. Well, right. I mean, I believe that the whole point of establishing a categorical, monocategorical approach in the first place was to prevent unfairness of having an alien held liable for something they didn't necessarily plead guilty to for administrative efficiency and to make sure that the alien is not prejudiced by having to rely on outdated or non-existent evidence. Thank you. OK, thank you very much. And we thank we thank both counsel for a job very well done. And we will take this case under. Thank you. Thank you very much. Thank you. And I certainly. But they keep going.